IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LINDSAY C. ANDERSON                    :

                                   :

    v.                 :     Civil Action No. DKC 08-2436

                                   :

REAL MEX RESTAURANTS, INC.,            :
ET AL.                                 :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this personal injury action are a motion for summary judgment (Paper 37) filed by Defendants Real Mex Restaurants, Inc., et al. and a motion *in limine* (Paper 38) filed by Plaintiff Lindsay C. Anderson.  The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Defendants' motion for summary judgment will be granted and Plaintiff's motion *in limine* will be denied.

**I.   Background**

The facts viewed in the light most favorable to Plaintiff, the non-moving party, are as follows.  This case arises from an allergic reaction that Plaintiff Lindsay C. Anderson experienced after dining at one of Defendants' restaurants.  Plaintiff has a severe dairy allergy that was first discovered when she was six months old.  Plaintiff alleges that she has "enjoyed safe eating

at public restaurants" at numerous locations in the United States and abroad. (Paper 2 ¶ 7).[1]

On July 11, 2006, Plaintiff ate at the Chevy's of Greenbelt restaurant located at 7511 Greenbelt Road, Greenbelt, Maryland 20770. (*Id.* at ¶¶ 9-10). Plaintiff dined with four other individuals: Frank Alexander, Kelly Alexander, Jennifer Crump, and Dan Hanlon. Plaintiff ordered a Santa Fe Chopped Salad with no bleu cheese, a dish that she had safely consumed on at least four previous occasions. (*Id.* at ¶ 12). The Santa Fe Chopped Salad is described on the menu as "[g]rilled chicken breast, crispy bacon, fresh Hass avocado, fire-roasted peppers, crumbled Bleu cheese and fire-roasted corn salsa on chilled hearts of romaine." (Paper 37, Attach. 8, at 2). Plaintiff advised the server that she had "severe milk allergies" and not to put any cheese on the salad. (Paper 2 ¶ 14). When Plaintiff's salad arrived, she visually checked the salad for any cheese before she started to eat. (*Id.* at ¶ 16). Plaintiff did not see any

---

[1] Plaintiff contends that it is inappropriate to rely on the statements in her unverified complaint in resolving this summary judgment motion. Her assertion is incorrect. Any party may move, with or without supporting affidavits, for summary judgment under Fed.R.Civ.P. 56. As will be fully discussed later in this opinion, the party with the burden of proof at trial must supply evidence to support all material facts. The other party may simply assert that the opposing party is unable to meet that standard. In reciting facts in the light most favorable to Plaintiff, the non-moving party, it is entirely permissible to rely on the assertions in her complaint, verified or otherwise.

cheese in her salad, and she ate the majority of the salad. (*Id.*). Plaintiff's dining companions did not observe cheese or dairy in Plaintiff's salad. Plaintiff also ate chips and salsa and drank a glass of water. (*Id.* at ¶ 12).

Plaintiff's dining companions all ordered food that contained dairy ingredients. Frank Alexander ordered a guacamole appetizer for the table to share. (Paper 37, Attach. 3 ¶ 7, Attach. 4 ¶ 8, Attach. 5 ¶ 9, Attach. 6 ¶ 4). The guacamole appetizer was prepared by the server, at the end of the table closest to Plaintiff. (Paper 37, Attach. 7, 72:13-16). The guacamole appetizer consisted of several ingredients, including cheese. Plaintiff said she was not going to eat the appetizer, so Dan Hanlon told the server "to go ahead and add the cheese to the appetizer." (Paper 37, Attach. 5 ¶ 9). Plaintiff did not object to the preparation of the appetizer at the table by the server and "felt fine with the way that she prepared it." (Paper 37, Attach. 7, 74:17-20). Plaintiff's dining companions ate chips, salsa, and guacamole. (Paper 37, Attach. 4-6). Frank Alexander and Dan Hanlon each ordered the Chicken Fajita Platter, which is served with dairy ingredients. (Paper 37, Attach. 2, at 3; Attach. 8, at 3). Kelly Alexander ordered the Chimichanga, which contains dairy ingredients. (Paper 37, Attach. 8, at 3).

After Plaintiff left the restaurant, she suffered a severe allergic reaction and was hospitalized.   (Paper 2 ¶¶ 20-31). Plaintiff believes that dairy was the cause of her reaction.

Plaintiff filed a complaint in the Circuit Court for Prince George's County, Maryland on July 24, 2008.   (Paper 2). Plaintiff alleges that the

> near-death medical emergency caused her to suffer not only on lost wages and continuing medical costs, but also emotional and psychological effects, including but not limited to anxiety, depression, a loss of confidence, avoidance of social situations, crying episodes, helplessness, frustration, depression, trauma and anxiety and avoidance of all eating.

(*Id.* at ¶ 32).   Plaintiff alleges that Defendants negligently harmed her as a customer, guest, and/or invitee of the restaurant.   (Paper 2, at 6).   Alternatively, Plaintiff argues that Defendants are liable based on *res ipsa loquitur*.   (*Id.* at 8).

Defendants removed the case to the United States District Court for the District of Maryland on the ground of diversity jurisdiction on September 17, 2008.   (Paper 1).   After some discovery, Defendants filed a motion for summary judgment (Paper 37).   Subsequently, Plaintiff filed a motion *in limine*, seeking to preclude the opinions of Defendants' expert Dr. Oral Alpan.   (Paper 38).

## II.  Motion for Summary Judgment

### A.    Standard of Review

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297.  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  *Celotex Corp.*, 477 U.S. at 323.   "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.*  Thus, on those issues on which the nonmoving party will

have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

   **B.   Analysis**

   Defendants argue that there is no genuine dispute of material fact as to Defendants' alleged negligence and that the doctrine of *res ipsa loquitur* is inapplicable, so summary judgment should be granted. Defendants contend that although Plaintiff alleges Defendants "owed her a duty to 'maintain safe premises, provide safe services and sell safe food and drink on [the restaurant's] premises,'" "Plaintiff [] cannot raise a dispute of material fact as to Defendants' alleged breach." (Paper 37, at 4). Plaintiff characterizes the alleged breach as Defendants' failure to "properly, timely, and adequately prepare and inspect the food being served and failing to heed Ms.

Anderson's instructions and warnings to keep her food free from cheese and her warnings that she suffers from 'severe milk allergies.'" (*Id.*).  Defendants argue that Plaintiff has not presented any evidence that there was any cheese or dairy in her food and has only presented evidence that she became ill after eating at the restaurant.  Defendants conclude that because Plaintiff cannot establish each of the essential elements to a claim of negligence, summary judgment is appropriate.

Furthermore, Defendants argue that the doctrine of *res ipsa loquitur* is inapplicable in this case.  Defendants contend that Plaintiff has not established the requirements for *res ipsa loquitur* because she has not shown that her injuries would not have happened if Defendants had exercised proper care and that Defendants had exclusive control of an injury-causing instrumentality.  (*Id.* at 9-11).  Defendants also assert that *res ipsa loquitur* is not appropriate because Plaintiff's expert has raised an inference of negligence.

Plaintiff counters that summary judgment should be denied because "there are numerous material facts in dispute." (Paper 39, at 1).  Plaintiff asserts that the following disputes exist as to material facts: (1) whether Plaintiff is allergic to another unknown food item; (2) whether cheese was on Plaintiff's meal; and (3) whether Plaintiff only experiences anaphylactic reactions upon the ingestion of dairy products.  (*Id.* at 4, 7,

13).   Plaintiff contends that she has presented substantial circumstantial evidence that dairy was in her entrée and so that disputed issue should be left to a jury.  Furthermore, Plaintiff rejects Defendants' attack on her *res ipsa loquitur* claim, arguing that Plaintiff's injury could only have stemmed from Defendants' negligence and that circumstantial evidence shows that Defendants had exclusive control over the food that Plaintiff ordered and ate.  (*Id.* at 20-22).  Finally, Plaintiff insists that *res ipsa loquitur* may apply even though Plaintiff's expert has testified to the probability of Defendants' negligence.

The essence of Plaintiff's negligence claim is that she experienced an allergic reaction to dairy after eating at Chevy's and the dairy must have come from the salad prepared negligently by Defendants.   While there is evidence that Plaintiff is severely allergic to dairy, that she experienced the allergic reaction after eating at Chevy's, and thus must have ingested dairy there, as will be explored below, there is insufficient evidence that the source of the dairy was the salad.   Because Plaintiff cannot exclude an equally plausible source of the dairy that she ingested, one that was not the fault of Defendants, her claim must fail, whether based on *res ipsa loquitur* or traditional negligence.

The Court of Appeals of Maryland explained that "*[r]es ipsa loquitur* is applied in negligence actions as a permissible inference that literally means 'the thing speaks for itself.'" *Dover Elevator Co., v. Swann*, 334 Md. 231, 236 (1994). *Res ipsa loquitur* requires proof of the following three elements: (1) a casualty of the kind which does not ordinarily occur in the absence of negligence; (2) that was caused by an instrumentality exclusively in the defendant's control; (3) under circumstances indicating that the casualty was not caused by an act or omission of the plaintiff. *Dover*, 334 Md. at 236-237.   In order to rely on *res ipsa loquitur*, Plaintiff must establish all three elements.

First, Plaintiff has not shown that her allergic reaction was "a casualty of the kind which does not ordinarily occur in the absence of negligence."   The Court of Appeals of Maryland has stated:

> The doctrine of *res ipsa loquitur* is applicable only when the facts and surrounding circumstances tend to show that the injury was the result of some condition or act which ordinarily does not happen if those who have the control or management thereof exercise proper care.   It does not apply where it can be said from ordinary experience that the accident might have happened without the fault of the defendant.

*Holzhauer v. Saks & Co.*, 346 Md. 328, 335-36 (1997)(quoting *Greeley v. Baltimore Transit Co.*, 180 Md. 10, 12-13 (1941)).

Plaintiff cannot satisfy this requirement because the evidence indicates that, in addition to the possibility that the dairy was in the salad when it came from the kitchen, there are other likely explanations for her allergic reaction. Plaintiff, of course, contends that she did not see any cheese or dairy in what she ate. Dr. Banks testified that an almost invisible amount of dairy could cause the reaction Plaintiff experienced. Plaintiff attests that she ate the majority of her salad and shared chips and salsa with her companions, who were served an appetizer and entrées containing dairy products. The miniscule amount of dairy, that would not be obvious to the naked eye, could have come from the salad, but it also could have come from the other sources of dairy on the table and being shared by her companions. Plaintiff points to Dr. Banks' testimony that he concludes that the dairy didn't come from contamination at the table because people like Plaintiff have experience being careful and scrupulous in eating around dairy. But this is speculation, and not evidence. Unlike *Tucker v. University Specialty Hosp.*, 166 Md. App. 50, 887 A.2d 74 (2005), Plaintiff's expert certainly cannot and did not opine that any presence of dairy at Plaintiff's plate was necessarily the result of Defendants' negligence. He is an allergist, not an

expert in food preparation at a restaurant. He did not opine as to the standard of care in food preparation.[2] The instrumentality of Plaintiff's injury was not a highly regulated drug completely within Defendants' control. Thus, Plaintiff has not shown that the accident could not have happened without the fault of the Defendants.

Additionally, Plaintiff cannot satisfy the second element, namely that the injury-causing instrumentality was in the exclusive control of Defendant:

> The element of control has an important bearing as negativing the hypothesis of an intervening cause beyond the defendant's control, and also as tending to show affirmatively that the cause was one within the power of the defendant to prevent by the exercise of care. Thus it has been held that the inference is not permissible where . . . the opportunity for interference by others weakens the probability that the injury is attributable to the defendant's act or omission.

*Holzhauer*, 346 Md. at 337 (internal citations omitted).

Maryland courts do not apply the "exclusive control" test literally; however, a plaintiff must produce "sufficient evidence tending to eliminate other causes, such as the absence of negligence, negligence of third parties, or the plaintiff's own alteration or misuse." *Harrison v. Bill Cairns Pontiac of*

---

[2] In *Tucker*, the court also reiterated that the *res ipsa* doctrine is inapplicable in cases requiring expert testimony.

*Marlow Heights, Inc.*, 77 Md.App. 41, 48 (1988)(citing *C & P Tel. Co. of Md. v. Hicks*, 25 Md.App. 503, 531-33 (1975)). Essentially, a plaintiff arguing *res ipsa loquitur* must show that no one interfered with the instrumentality that caused the injury after it left the defendant's hands; thus, the accident must have been the defendant's fault.

Plaintiff has not shown that Defendants had exclusive control over any dairy that she may have consumed. Plaintiff attests that she was at Defendants' restaurant for over an hour, from approximately 2 p.m. to 3:15 p.m. (Paper 2 ¶¶ 10, 17). Plaintiff's dining companions ate an appetizer and entrée that contained dairy products and shared chips and salsa with Plaintiff. After the food was served to Plaintiff and her companions, any dairy that it may have contained did not remain in Defendants' control.

Finally, and for the same reasons, Plaintiff has not shown that her allergic reaction did not occur by her own act or omission. Plaintiff testified that she inspected her salad before consuming the majority of it. Plaintiff also testified that she shared chips and salsa with her dining companions. Plaintiff has not presented evidence that rules out the possibility that her dining companions used the same chips to eat the salsa and their guacamole. Though Dr. Banks opined that Plaintiff's dining companions would have been "relatively sloppy

with the guacamole and cheese" for cross-contamination to occur between Plaintiff's food and their own, Plaintiff has not shown that her own acts or omissions did not result in her allergic reaction.  (Paper 39, Attach. 6, 30:13-15).

Plaintiff has not satisfied the elements of *res ipsa loquitur*.  Therefore, Plaintiff's complaint may only survive summary judgment if her negligence claim otherwise survives.

To prevail on a claim of negligence under Maryland law, a plaintiff must prove: "(1) a duty owed to him, (2) a breach of that duty, (3) a legally cognizable relationship between the breach of duty and the harm suffered, and (4) damages." *National Grange Mut. Ins. Co. v. Verizon's Benefits Center*, 541 F.Supp. 2d 745, 749 (D.Md. 2008)(citing *Jacques v. First Nat'l Bank of Maryland*, 307 Md. 527, 531 (1986)).  "Summary judgment in favor of the defendant may be appropriate if the plaintiff cannot show one of the essential elements to establish negligence." *Samuel v. Ford Motor Co.*, 112 F.Supp.2d 460, 467 (D.Md. 2000)(citing *Hensley v. Danek Med., Inc.*, 32 F.Supp.2d 345, 349-50 (W.D.N.C. 1998)).

Whether a legal duty exists is a question of law. *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999); *see also* Restatement (Second) of Torts § 328 B(b) (1965)(stating that the function of the court is to determine whether a duty exists). "Duty" in negligence is defined as "an obligation, to which the

law will give recognition and effect, to conform to a particular standard of conduct toward another." *Ashburn v. Anne Arundel County*, 306 Md. 617, 627 (1986).   Plaintiff states that Defendants owed her a duty to "maintain safe premises, provide safe services and sell safe food and drink on [the restaurant's] premises" and later contends that "Chevy's undertook a duty to prepare and serve the meal free from dairy."   (Paper 2 ¶ 34; Paper 39, at 19).   Though Plaintiff has not cited to any Maryland law that supports her assertion that Defendants owed her a duty, Maryland case law indicates that restaurants have a duty of ordinary care to serve food to their patrons that is fit for consumption.   *See, e.g., Child's Dining Hall Co. v. Swingler*, 173 Md. 490 (1938)(finding that a proprietor of a restaurant serving food to the public is not an insurer as to the quality of the food served, and his negligence liability, if any, for serving unwholesome food is based upon his failure to exercise reasonable or ordinary care in preparing and serving the food.).

Plaintiff has not provided sufficient evidence to establish that a genuine issue of material fact exists as to whether Defendants breached their duty or caused the harm she suffered. The Maryland Court of Appeals has established, "if [a] plaintiff offers evidence which raises two or more inferences of the harm (or negligence), for only one of which the defendant is

14

responsible, no cause of action is made out." *Joffre v. Canada Dry Ginger Ale, Inc.*, 222 Md. 1, 8 (1960)(citing *Rawls v. Hochschild, Kohn, & Co.*, 207 Md. 113, 119 (1955); *Wasserman v. Hutzler Brothers Co.*, 219 Md. 310 (1959)). Plaintiff presents evidence that she suffered from an allergic reaction to dairy that resulted from something that she consumed at Defendants' restaurant. Plaintiff's expert, Dr. Banks, testified that it was his opinion within a reasonable degree of medical certainty that Plaintiff had an allergic reaction to the salad she consumed at the restaurant. (Paper 37, Attach. 9, 30:6-9). His conclusion that it was the salad, and not some other source of dairy contamination at the table, is not based on his own expertise, but rather on speculation. Plaintiff has not presented any evidence that Defendants failed to exercise ordinary care to serve her salad free from dairy. Plaintiff testified that she visually inspected her salad before eating it and did not see any cheese. Dr. Banks testified that he could not say "precisely where" the dairy came from that caused Plaintiff's reaction. (*Id.* at 34:5-12). Additionally, Plaintiff has raised the possibility that her food was cross-contaminated with her dining companions' food because she shared chips and salsa with them while they were consuming an appetizer and entrées that contained dairy ingredients. Therefore,

summary judgment will be granted to Defendants on Plaintiff's negligence claim.

## III. Motion *In Limine*

Plaintiff argues in her motion *in limine* that the testimony and opinions of Defendants' expert, Dr. Oral Alpan, "should be precluded as they are deficient on their face and will not aid the trier of fact in determining any legal or factual matter at issue in this case." (Paper 38, at 1). Because Defendants' motion for summary judgment will be granted and because the court did not rely on Dr. Alpan's testimony in reaching that determination, Plaintiff's motion *in limine* will be denied as moot.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted and Plaintiff's motion *in limine* will be denied. A separate Order will follow.

                                        /s/
                    _____
                    DEBORAH K. CHASANOW
                    United States District Judge